UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WATERKEEPER ALLIANCE, INC., SIERRA CLUB, CLEAN WATER ACTION, and ENVIRONMENTAL INTEGRITY PROJECT,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY,<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## INTRODUCTION

1. Plaintiffs Waterkeeper Alliance, Inc., Sierra Club, Clean Water Action, and Environmental Integrity Project (collectively, "Plaintiffs") assert violations of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, by Defendant United States Environmental Protection Agency ("EPA") for improperly withholding requested agency records concerning EPA's reconsideration of and proposed revisions to the "Disposal of Coal Combustion Residuals from Electric Utilities" rule, 80 Fed. Reg. 21,302 (Apr. 17, 2015) ("Coal Ash Rule").

2. Coal-fired power plants in the U.S. generate one of the largest and most toxic solid waste streams in the nation, annually producing over a hundred million tons of coal combustion residuals ("CCR" or "coal ash"). Coal ash includes large quantities of heavy metals and metal compounds such as arsenic, boron, cadmium, chromium, lead, mercury, selenium, and thallium. These toxic chemicals can cause cancer and other adverse health impacts including reproductive, neurological, respiratory, and developmental problems.

1

3. In 2015, EPA adopted the Coal Ash Rule ("2015 Final Rule") pursuant to the Resource Conservation and Recovery Act ("RCRA"), creating the first-ever national environmental, health, and safety protections from coal ash disposal after a long history of regulatory delay. *See Appalachian Voices v. McCarthy*, 989 F. Supp. 2d 30, 54-56 (D.D.C. 2013) (directing EPA to comply with statutory duty to promulgate coal ash disposal regulations).

4. On September 13, 2017, EPA announced that it would initiate rulemaking to reconsider provisions of the 2015 final rule as requested in petitions submitted by the Utility Solid Waste Activities Group and AES-Puerto Rico. *See* Letter from E. Scott Pruitt, Adm'r, EPA, to Douglas Green et al. (Sept. 13, 2017) (attached as Ex. 1).

5. To date, EPA has released three different proposed revisions that significantly blunt important protections in the 2015 Final Rule and has announced an additional proposed revision.

6. On November 9, 2018, Plaintiffs submitted a FOIA request, seeking records since January 20, 2017 concerning reconsideration of, or proposed revisions to, the 2015 Final Rule, including any communications with outside entities or other federal agencies regarding the 2015 Final Rule. Ex. 2.

7. Despite Plaintiffs' steadfast cooperation with EPA and despite EPA's having informed Plaintiffs that it has prepared a production of responsive records for release to Plaintiffs, EPA has not yet actually released any documents responsive to Plaintiffs' FOIA request. Indeed, as described in greater detail below, EPA has repeatedly failed to provide responsive documents to Plaintiffs, even when it has promised to do so. Nor has EPA provided a final determination on Plaintiffs' November 9, 2018 FOIA request.

8. As a result, EPA has failed to provide Plaintiffs with a complete and lawful response to, or determination of, their FOIA request within the timeframe required by FOIA.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B).

10. Venue is proper in this district because plaintiff Waterkeeper Alliance, Inc. resides and has its principal place of business in this judicial district. 5 U.S.C. § 552(a)(4)(B).

## PARTIES

11. Plaintiff Waterkeeper Alliance, Inc. ("WKA") is a nonpartisan, nonprofit organization headquartered in New York, New York uniting more than 300 Waterkeeper Organizations and Affiliates around the world and focusing citizen advocacy on issues that affect our waterways and water quality. Within the United States, WKA works with over 170 Waterkeeper Member Organizations and Affiliates to create and preserve drinkable, fishable, swimmable, and clean waterways. Communities nationwide look to WKA for critical information concerning, among other things, sources of pollution in their local waterways.

12. WKA has a proven ability to disseminate information quickly and effectively through various communication channels including publications, public interest litigation, educational programs, media initiatives, and its website. WKA's website, www.waterkeeper.org, is updated regularly and draws tens of thousands of visits per month. WKA also publishes *Waterkeeper Magazine*, a magazine on water-related environmental and public health subjects of current interest, which has an annual reach of more than one million people. *Currents* is WKA's electronic newsletter on water-related issues that is distributed by email to approximately 24,000

subscribers monthly. WKA also issues press releases and participates in press conferences and interviews with reporters.

13. Plaintiff Sierra Club was founded in 1892 and is the nation's oldest grassroots environmental organization. Sierra Club's national headquarters is located in Oakland, California. Sierra Club is a nonprofit, membership organization incorporated in California with more than 840,000 members in all fifty states and in the District of Columbia. Sierra Club's purpose is to explore, enjoy, and protect the wild places of the earth; to practice and promote the responsible use of the earth's ecosystems and resources; and to educate and enlist humanity to protect and restore the quality of the natural and human environments.

14. Sierra Club's Beyond Coal campaign is a major effort to replace dirty coal with clean energy by mobilizing grassroots activists in local communities to advocate for the retirement of old and outdated coal plants and to prevent new coal plants from being built. As part of its campaign, Sierra Club has prioritized efforts to ensure that coal-fired power plants safely dispose of their coal ash in compliance with RCRA and other environmental laws and has deployed an active communications, organizing, and litigation campaign to further these efforts.

15. The Beyond Coal campaign participates in dozens of agency and judicial proceedings concerning coal-fired power plants every year, has a large communications budget, and communicates weekly with tens of thousands of citizens. Campaign experts and attorneys use available information to develop reports, media materials, and litigation briefs that further educate the public and decision-makers. Through this campaign, Sierra Club has built an extensive national network of public organizations and individuals interested in these issues, and it communicates with them regularly. Sierra Club also disseminates information through its website, www.sierraclub.org.

16.     Plaintiff Clean Water Action ("CWA") is a nonpartisan, nonprofit organization incorporated under the laws of the District of Columbia and has more than 600,000 members nationwide. CWA's mission includes the prevention of pollution in the nation's waters, protection of natural resources, and creation of environmentally safe jobs and businesses. CWA has continuously worked to strengthen and preserve key drinking water protections and to protect small streams and wetlands. With its seasoned professional staff and support from volunteers and members, CWA has led hundreds of successful campaigns in dozens of states around the country.

17.     CWA disseminates information on its website, www.cleanwateraction.org, by blogging weekly and publishing newsletters, reports, and scorecards on both state and national issues. CWA is therefore capable of making the information from this request available to hundreds of thousands of people around the country, as well as to relevant members of Congress and other elected officials.

18.     Plaintiff Environmental Integrity Project ("EIP") is a nonpartisan, nonprofit organization founded in 2002 by former EPA enforcement attorneys to advocate for more effective enforcement of environmental laws. EIP's three objectives are: to provide objective analysis of how the failure to enforce or implement environmental laws increases pollution and affects the public's health; to hold federal and state agencies, as well as individual corporations, accountable for failing to enforce or comply with environmental laws; and to help local communities in key states obtain the protection of environmental laws.

19.     EIP advocates for laws to protect public health and the environment from air and water pollution from coal-fired power plants and other large sources of pollution. As part of its efforts to ensure effective enforcement of environmental laws, EIP participates in federal and

5

state rulemakings related to water pollution from the utility industry and brings lawsuits to enforce the Clean Water Act on behalf of community and environmental groups that are harmed by coal-fired power plant pollution. Additionally, EIP uses public data obtained through FOIA requests to develop reports, media materials, and litigation briefs that educate the public and decision-makers and to achieve its objectives. EIP also disseminates information through its website, www.environmentalintegrity.org.

20. Plaintiffs routinely use FOIA to obtain information from federal agencies, which Plaintiffs' legal and scientific experts analyze in order to inform their members and the public about public health and environmental issues, such as the dangers of coal ash contamination. Plaintiffs regularly convey important information to their members and the public through publications and press releases, as well as by publicly releasing information and documents obtained through FOIA requests.

21. Plaintiffs bring this action on their own behalf and on behalf of their members. Plaintiffs and their members have been and continue to be injured by Defendant EPA's failure to provide requested records within the timeframe mandated by FOIA. The requested relief will redress these injuries.

22. Defendant EPA is a federal agency within the meaning of FOIA, 5 U.S.C. § 552(f)(1), and has possession or control of the records Plaintiffs seek in this action.

## LEGAL BACKGROUND

23. Enacted in 1966, the Freedom of Information Act was designed to encourage public disclosure of information in order to "ensure an informed citizenry, vital to the functioning of a democratic society." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). To this end, FOIA requires agencies of the federal government to release, upon request,

information to the public, unless one of nine specific statutory exemptions applies. 5 U.S.C. § 552(a)(3)(A); *Milner v. Dep't of Navy*, 562 U.S. 562, 564-5 (2011). These exemptions are narrowly construed, and the agency bears the burden of establishing the applicability of each exemption as to each record for which it is claimed. *See Milner*, 562 U.S. at 565; *Halpern v. F.B.I.*, 181 F.3d 279, 287 (2d Cir. 1999); *see also* 5 U.S.C. § 552(a)(4)(B).

24.     Upon receiving a FOIA request, an agency has twenty working days to respond by determining whether responsive documents exist and whether the agency will release them. 5 U.S.C. § 552(a)(6)(A); 40 C.F.R. § 2.104(a). An agency may delay an initial determination by ten working days only if the agency can demonstrate that it faces "unusual circumstances." 5 U.S.C. § 552(a)(6)(B); 40 C.F.R. § 2.104(e). FOIA further requires agencies to make records themselves "promptly available" to requesting parties. 5 U.S.C. § 552(a)(3)(A).

25.     An agency has a duty to conduct an "adequate" search for responsive documents. *Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982). In order to demonstrate that its search was adequate, "the agency must show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). An agency affidavit supporting the adequacy of its search "must be relatively detailed and nonconclusory, and submitted in good faith." *N.Y. Times Co. v. U.S. Dep't of Justice*, 756 F.3d 100, 124 (2d Cir. 2014) (citations omitted).

26.     If an agency makes an initial determination that it will deny a FOIA request in whole or in part, the requester is entitled to administratively appeal the determination. 5 U.S.C. § 552(a)(6)(A)(ii). EPA regulations require administrative appeals to be filed within ninety calendar days from the date of the letter that denied the request. 40 C.F.R. § 2.104(j). FOIA

requires the agency to make an administrative appeal determination within twenty working days of receipt of such an appeal. 5 U.S.C. § 552(a)(6)(A)(ii).

27. FOIA provides that the District Court shall have jurisdiction "to enjoin [an] agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). A requester need not pursue any administrative appeals process before seeking judicial review "if the agency fails to comply with the applicable time limit provisions" under FOIA. 5 U.S.C. § 552(a)(6)(C)(i); *see also* 40 C.F.R. § 2.104(l).

28. FOIA and EPA's own FOIA regulations state that a requester is entitled to a waiver of fees associated with responding to a FOIA request when the information sought "is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii); 40 C.F.R. § 2.107(*l*)(1). Further, an agency cannot assess fees against a requester if it does not respond to the request within the time established by FOIA. *See* 5 U.S.C. § 552(a)(4)(A)(viii)(I).

29. FOIA permits the Court to "assess . . . reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E).

**FACTUAL BACKGROUND**

30. On November 9, 2018, Plaintiffs submitted a FOIA request to EPA seeking all records created, stored, or received since January 20, 2017 concerning revisions to the 2015 Final Rule. Ex. 2. Specifically, Plaintiffs asked that EPA release

> (1) all records created, stored, or received by the EPA Administrator, any of the Administrator's staff, or the EPA Office of Land and Emergency Management concerning EPA's possible reconsideration of, or proposal of revisions to, the CCR rule as well as the *Util. Solid Waste Activities Grp. v. Envtl. Prot. Agency* decision [901 F.3d 414 (D.C. Cir. 2018)];
>
> (2) all records reflecting communications between EPA (or the Department of Justice) and the Utility Solid Waste Activities Group and/or any other entity or individual representing an electric generating utility or the utility industry, concerning the CCR rule; and
>
> (3) all records reflecting communications between EPA (or the Department of Justice) and the White House, the U.S. Small Business Administration, or any other federal agency concerning the CCR rule.

Ex. 2 at 1-2. Plaintiffs also requested a public interest fee waiver. *Id.* at 1, 3-7.

31.     EPA received Plaintiffs' FOIA Request on November 9, 2018. In a letter to Plaintiffs dated November 20, 2018 EPA stated that it had reviewed Plaintiffs' request and that no charges were "associated" with the request because the request did not "reach the minimum billable amount." Ex. 3.

32.     EPA next responded to the request in an email sent by EPA employee Ana Espinoza to Plaintiffs' counsel on December 19, 2018, stating that "the Office of the Administrator has experienced a substantial increase in the volume and complexity of FOIA requests" resulting in "a significant backlog in FOIA processing." She stated that the request remained in "the search phase of processing." Ex. 4.

33. On April 22, 2019, Plaintiffs' counsel sent an email to EPA asking for an update on the status of Plaintiffs' FOIA request. Espinoza replied two days later informing Plaintiffs that she "believe[d]" she would "hear back from the subject matter experts this week" regarding Plaintiffs' FOIA request and that "we'll have records soon to review." Ex. 5.

34. In a subsequent email dated May 6, 2019, again responding to Plaintiffs' request for an update, Espinoza stated that there would be "a better response for you by early tomorrow morning." Ex. 6.

35. Plaintiffs did not receive any communication from EPA on May 7, 2019.

36. On May 8, 2019, Espinoza informed Plaintiffs' counsel that EPA was transferring Plaintiffs' FOIA request from the Office of the Administrator to the Office of Land and Emergency Management ("OLEM"). She stated that "[o]ur staff was unable to locate records in the Administrator's office, therefore causing a significant delay in the search phase of this request . . . . [B]ecause our Office is transferring a backlogged FOIA [OLEM] will have 20 days to provide a final response to you." Ex. 7. Finally, Espinoza included contact information for another EPA employee, Wanda McLendon, who could answer "further questions regarding updates on the process of your FOIA." *Id.*

37. On May 22, 2019, Plaintiffs' counsel sent an email to McLendon requesting an update on the status of Plaintiffs' FOIA request. McLendon replied on behalf of EPA on May 22, 2019, explaining that "[OLEM] hasn't moved forward on your request because Ms. Ana Espinoza failed to complete the process within FOIA online when she reassigned it to our office." Ex. 8. McLendon also stated that "this is to inform you of the expected date of completion – June 20, 2019." *Id.*

38. Plaintiffs did not respond to EPA's May 22, 2019 message.

39. On May 29, 2019, EPA sent another email to Plaintiffs stating that Plaintiffs' lack of response to the previous email "will now push the [projected date of completion] five days later to June27 [sic]." Ex. 9.

40. Plaintiffs' counsel replied via email that same day, stating that "The June 20 estimated date of completion is acceptable to us as the agency's estimate of its next response on this request. We do not consent to any other extension." Ex. 10.

41. On July 8, 2019, Plaintiffs' counsel received an email from EPA employee Richard Huggins Jr. in which he advised that his branch, Energy Recovery and Waste Disposal, had been assigned to Plaintiffs' FOIA request. Huggins suggested that he and Plaintiffs' counsel discuss "custodians, search terms and types of information/documents." Ex. 11.

42. Huggins and Plaintiffs' counsel did speak on July 18, 2019 and agreed that Plaintiffs would identify search terms, specific EPA custodians, and keywords which EPA could use in conducting a search for responsive documents. Ex. 12.

43. On July 24, 2019, Plaintiffs' counsel sent Huggins and EPA employee Kevin Hill Plaintiffs' proposal for search terms and custodians. The search terms were ranked according to Plaintiffs' priority for interim releases. Plaintiffs' counsel asked Hill and Huggins to add any custodians or search terms EPA believed would be responsive to the FOIA request. Ex. 13.

44. EPA did not respond to Plaintiffs' July 24 message and so on August 7, 2019, Plaintiffs' counsel sent an email to Huggins and Hill requesting an update on the status of their review of Plaintiffs' proposed search terms and custodians. Later that day, Huggins replied that EPA should be able to review Plaintiffs' proposed search terms and custodian list "before the end of the week." Huggins also suggested the need for a follow up conversation with Plaintiffs' counsel. Ex. 14.

45. Plaintiffs' counsel and Hill did have a conversation on August 14, 2019 in which Hill proposed ways that EPA could narrow Plaintiffs' proposed search terms and custodians to reduce the number of responsive records. Plaintiffs' counsel agreed to several of Hill's suggestions, while rejecting others, and Hill advised that he would follow up on their conversation by the week of August 26.

46. On September 3, Plaintiffs' counsel asked for an update on their FOIA request. Later that day, Huggins told Plaintiffs' counsel via email that one of Plaintiffs' proposed search terms, "closure method," was outside of the scope of the FOIA request. Ex. 15.

47. In response, Plaintiffs' counsel asked if EPA could provide an estimated date by which it would have a complete response to Plaintiffs' FOIA request. On September 4, Huggins replied that he could have a conversation about a new estimated date of completion once EPA knew how many documents were preliminarily located through the eDiscovery search. He also offered to provide Plaintiffs' counsel with an update on the search during the week of September 16. Ex. 16.

48. Plaintiffs' counsel and Hill had a conversation on September 10, 2019 in which Hill stated that the eDiscovery search results were too voluminous for EPA to process.. To help narrow the search results, Plaintiffs' counsel suggested that the eDiscovery search focus on external communications.

49. On September 18, Hill emailed Plaintiffs' counsel with EPA's narrowed list of custodians and search terms. Hill asked Plaintiffs' counsel to further narrow the custodian list and search terms in order to expedite the release of documents. Hill also suggested that the search date range be narrowed. Ex. 17.

50. In an effort to cooperate, Plaintiffs' counsel proposed deleting certain search terms, requested records that reflected only external communications from the identified custodians, and asked that the date range not change. Ex. 18. Hill responded on October 2 that EPA would search for communications within Plaintiffs' proposed parameters. *Id.*

51. On October 14, Plaintiffs' counsel asked Hill for an update on the status of the search. The next day Hill responded that he had authorized the initial search from the eDiscovery team and would soon know more about the volume of responsive documents. Accordingly, Hill estimated that he and Plaintiffs' counsel could have a call about the search "early next week." Ex. 19.

52. Plaintiffs' counsel did not hear from Hill the following week, and on October 30, 2019, Plaintiffs' counsel again asked for an update on the status of the search. Ex. 20.

53. On November 1, 2019, Plaintiffs' counsel and Hill discussed the results of EPA's search. Upon Hill's request, Plaintiffs' counsel identified further ways in which EPA could narrow its search, including agreeing that EPA need not review emails from certain domains that were likely subscription newsletters received by EPA staff from media outlets. Hill advised Plaintiffs' counsel that EPA would likely be able to begin reviewing and releasing responsive records in approximately two weeks.

54. On November 15, 2019, Plaintiffs' counsel asked for an update on the status of the search. Hill responded that EPA's review was underway. Ex. 21.

55. On November 20, 2019, Huggins informed Plaintiffs' counsel that he expected the first release of documents to happen before Christmas. The release would include records from EPA political appointees Administrator Wheeler, Administrator Pruitt, Chief of Staff Ryan

13

Jackson, Assistant Administrator Peter Wright, Deputy Assistant Administrator Steven Cook, and Principal Deputy Assistant Administrator Barry Breen. *Id.*

56. In the summer of 2019, EPA changed its FOIA rules to add an additional layer of review by giving political appointees, like the Administrator, Assistant Administrators, Deputy Administrators, and Deputy Assistant Administrators, the authority to deny FOIA requests on the basis of specific records' responsiveness. Freedom of Information Act Regulations Update, 84 Fed. Reg. 30,028 (June 26, 2019). This change, which was announced without public input, still requires EPA to comply with applicable FOIA law.

57. Plaintiffs have not yet received any releases of responsive records from EPA.

58. On December 9, 2019, Plaintiffs' counsel asked Huggins and Hill for an update. Ex. 22. In response, Plaintiffs' counsel received an automated message from Huggins relaying that he would be on leave until December 18. Ex. 23.

59. Plaintiffs' counsel wrote Huggins and Hill again on January 8, 2020 asking for an update. Ex. 22.

60. On January 10, 2020 Huggins wrote Plaintiffs' counsel explaining that, although he had cleared the release of a batch of records from Administrator Wheeler, Administrator Pruitt, Ryan Jackson, Peter Wright, Steven Cooke, and Barry Breen, a "snag hit in the process" that he was "unaware of." The documents were never released. Huggins informed Plaintiffs' counsel that he hoped to have the batch of documents "released shortly." *Id.*

61. On January 16, 2020 Plaintiffs' counsel wrote Huggins and Hill asking when they could expect the FOIA production. Ex. 24.

14

62. Plaintiffs have not received any reply to that email, any responsive records, nor a final determination from EPA on Plaintiffs' November 9, 2018 FOIA request. Plaintiffs have not received any further communication from EPA since January 10, 2020.

63. As of the date of this filing, the "estimated date of completion" for Plaintiffs' FOIA request in the FOIAonline database[1] is listed as "06/20/2019." The FOIAonline database also states that "[n]o records have been released yet" responsive to Plaintiffs' request. A printout of the FOIAonline webpage is attached as Exhibit 25.

## CLAIM FOR RELIEF: VIOLATION OF THE FREEDOM OF INFORMATION ACT

64. Plaintiffs re-allege and incorporate the allegations of all preceding paragraphs of this Complaint as if fully set forth herein.

65. By improperly withholding records responsive to Plaintiffs' November 9, 2018 FOIA request, EPA has violated FOIA's mandate to release agency records to the public. *See* 5 U.S.C. § 552(a)(3)(A), (a)(6).

66. Defendant EPA has failed to conduct an adequate search for responsive records.

67. Defendant EPA has wrongfully withheld the requested records from Plaintiffs.

68. Plaintiffs have exhausted the applicable administrative remedies.

69. Plaintiffs are entitled to obtain the requested records immediately at no cost.

---

[1] *See* https://foiaonline.gov/foiaonline/action/public/submissionDetails?trackingNumber=EPA-HQ-2019-001329&type=request.

## REQUEST FOR RELIEF

**WHEREFORE,** Plaintiffs request that this Court enter a judgment:

(1) declaring that Defendant EPA has violated FOIA by failing to provide all records responsive to Plaintiffs' FOIA request;

(2) ordering that Defendant EPA make all requested records available to Plaintiffs promptly and at no cost to Plaintiffs;

(3) retaining jurisdiction over this case to rule on any disputes over the adequacy of EPA's search for responsive records or any assertions by EPA that any responsive records, in whole or in part, are exempt from disclosure;

(4) awarding Plaintiffs' litigation costs and reasonable attorneys' fees in this action; and

(5) ordering such other relief as the Court may deem just and proper.

DATED: February 14, 2020               Respectfully Submitted,

                                       /s/ Thomas J. Cmar

                                       Thomas J. Cmar (TC 8791)
                                       Shubra Ohri (to be admitted pro hac vice)
                                       Earthjustice
                                       311 S. Wacker Dr., Ste. 1400
                                       Chicago, IL 60606
                                       (312) 500-2191
                                       E: tcmar@earthjustice.org

                                       *Counsel for Plaintiffs Waterkeeper Alliance, Inc.
                                       Sierra Club, Clean Water Action, and
                                       Environmental Integrity Project*